IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| PHILLIP W. WALKER, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | No. 5:13-CV-91 (CAR) |
| | : | |
| BANK OF AMERICA, N.A., | : | |
| | : | |
| Defendant. | : | |
| | : | |

ORDER ON DEFENDANT'S MOTION TO DISMISS
AND PLAINTIFF'S MOTION FOR SANCTIONS

Before the Court is Defendant Bank of America N.A.'s Motion to Dismiss Plaintiff Phillip W. Walker's Complaint and Plaintiff's Motion for Sanctions for Violation of Court Order. Having reviewed the applicable law, the Complaint, and the Motions and responses thereto, Defendant's Motion to Dismiss [Doc. 4] is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's claims for attempted wrongful foreclosure and intentional infliction of emotional distress are **DISMISSED**; however, his breach of contract claim and request for attorney's fees will proceed. The Consent Interlocutory Injunction remains in effect; therefore, Defendant's request to deny Plaintiff injunctive relief is **DENIED**. Finally, for the reasons discussed below, Plaintiff's Motion for Sanctions [Doc. 14] is **DENIED**.

I. DEFENDANT'S MOTION TO DISMISS

On a motion to dismiss, the Court must accept as true all well-pleaded facts in a plaintiff's complaint.[1] To avoid dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[2] A claim is plausible where the plaintiff alleges factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[3] The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports a plaintiff's claims.[4] "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[5] Factual allegations must be enough to raise a right to relief above the speculative level.[6]

## BACKGROUND

For purposes of this Motion, the Court accepts all factual allegations in the Complaint as true and construes them in the light most favorable to Plaintiff.[7]

---

[1] *Sinaltrainal v. Coca‐Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009).
[2] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted).
[3] *Id.*
[4] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).
[5] *Id.* at 545.
[6] *Id.*
[7] *See Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1303 (11th Cir. 2008).

On November 18, 2002, Plaintiff executed a Note and Security Deed in the amount of $254,400.00 in favor of Fairfield Financial Services, Inc. to purchase property located at 605 Pineland Place in Macon, Georgia.[8]  The loan provided for repayment through monthly payments of $1,607.98 and included the following escrow account waiver:

> If [Plaintiff] is obligated to pay Escrow Items directly, pursuant to a waiver, and [Plaintiff] fails to pay the amount due for an Escrow Item, [Defendant] may exercise its rights under Section 9 and pay such amount and [Plaintiff] shall then be obligated under Section 9 to repay to [Defendant] any such amount.  [Defendant] may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, [Plaintiff] shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.[9]

Upon acquiring the Note, Defendant Bank of America, N.A. honored this waiver.[10]  However, in January 2012, Plaintiff's regular mortgage payment invoice indicated that his monthly payment had been increased to $2,300.00.[11]  Despite this new payment request, Plaintiff continued to make payments in the amount of $1,607.98.[12]  Plaintiff's payments were refused and returned.[13]

---

[8] First Am. Compl., ¶ 7 [Doc. 1-1].
[9] *Id.*; Security Deed, § 3 [Doc. 4-2].  The Court may take judicial notice of public records not attached to Plaintiff's Amended Complaint, such as the recorded Security Deed, when considering Defendant's Motion to Dismiss.  *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1272, 1280 (11th Cir. 1999).  The Security Deed is central to Plaintiff's claims and may be considered without converting Defendant's Motion to Dismiss to one for summary judgment.  *See Maxcess, Inc. v. Lucent Techs, Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005).
[10] First Am. Compl., ¶ 11.
[11] *Id.* at ¶ 12.
[12] *Id.* at ¶ 22.
[13] *Id.* at ¶¶ 23-24.

Plaintiff did not receive any written notice prior to this dramatic increase.[14]  In fact, Plaintiff did not learn until several months later that Defendant had paid Plaintiff's property taxes for September 2011.[15]  Defendant paid the property taxes without determining the basis for Plaintiff's non-payment, which was the result of a legitimate dispute between Bibb County and Plaintiff as to the tax assessment on the property.[16]  Accordingly, Plaintiff promised Defendant he would reimburse its property tax expenditures so long as the new escrow account was eliminated and his payment returned to the original $1,607.98.[17]

In July of 2012, Defendant offered Plaintiff a trial period modification calling for monthly payments of $1,743.37 for three months.[18]  Plaintiff made the first payment of $1,743.37, but in September of 2012 he received a new trial period modification proposal calling for monthly payments of $1,868.16.[19]  Rather than paying this amount, Plaintiff reverted back to making payments in the amount of $1,607.98.[20]  Thereafter, Defendant began to apply some of these payments to Plaintiff's account balance.[21]  However, in a letter dated December 12, 2012, Defendant threatened to foreclosure on the property.[22]

---

[14] *Id.* at ¶ 15.
[15] *Id.* at ¶ 16.
[16] *Id.* at ¶ 17.
[17] *Id.* at ¶ 25.
[18] *Id.* at ¶ 27.
[19] *Id.* at ¶ 30.
[20] *Id.* at ¶ 31.
[21] *Id.* at ¶ 33.
[22] *Id.* at ¶ 34.

Plaintiff filed the instant action against Defendant on January 10, 2013, in Bibb County Superior Court. On March 7, 2013, the superior court granted the parties' Consent Interlocutory Injunction, which enjoins Defendant from "proceeding with, conducting, or completing the foreclosure sale" of Plaintiff's property during the pendency of this action so long as Plaintiff makes monthly payments into the court's registry.[23] Defendant removed the action to this Court on March 14, 2013, based on diversity jurisdiction.

## DISCUSSION

In his First Amended Complaint, Plaintiff asserts five claims against Defendant for (1) breach of contract; (2) attempted wrongful foreclosure; (3) intentional infliction of emotional distress; (4) attorney's fees; and (5) injunctive relief during the pendency of this action. Defendant disputes all of these claims, and requests that the Court dismiss Plaintiff's action in its entirety. As an initial matter, Defendant's request to dismiss Plaintiff's claim for injunctive relief is **DENIED**. This Court has adopted the superior court's order enjoining foreclosure during the pendency of this case and will not permit Defendant to renege on its agreement with Plaintiff. The Court addresses each of Plaintiff's remaining claims in turn.

A. <u>Breach of Contract</u>

Plaintiff contends that Defendant breached the terms of the Security Deed by failing to honor the escrow waiver and instituting an escrow account without notice. In opposition, Defendant asserts that Plaintiff's allegations are unsupported and conclusory,

---

[23] Consent Interlocutory Injunction, p. 3 [Doc. 15-1].

thereby failing to state a claim for relief.  The Court disagrees.  Rather, Defendant's Motion appears to be "another example of what *Twombly* and *Iqbal* have wrought—a compulsion to file a motion to dismiss in every case."[24]

> These motions, which bear a close resemblance to summary judgment motions, view every factual allegation as a mere legal conclusion and disparagingly label all attempts to set out the elements of a cause of action as "bare recitals." They almost always, either expressly or, more often, implicitly, attempt to burden the plaintiff with establishing a reasonable likelihood of success on the merits under the guise of the "plausibly stating a claim" requirement.[25]

The rules of pleading "do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."[26]  Judicial inquiry at this stage focuses on whether the challenged pleadings "give the defendant fair notice of what the … claim is and the grounds upon which it rests."[27]  Plaintiff has satisfied these pleading requirements.

Under Georgia law, a breach of contract claim consists of three elements: (1) a breach with (2) resultant damages (3) to a party who has a right to complain about the contract being broken.[28]  Accepting Plaintiff's allegations as true, Defendant failed to provide written notice of its intent to establish an escrow account, in clear violation of the

---

[24] *Meyer v. Snyders Lance, Inc.*, No. 4:12-CV-215 (CDL), 2012 WL 6913724, at *1 (M.D. Ga. Dec. 12, 2012).
[25] *Id.*
[26] *Twombly*, 550 U.S. at 570.
[27] *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555).
[28] *Norton v. Budget Rent A Car Sys., Inc.*, 307 Ga. App. 501, 502 (2010).

terms of the Security Deed.[29]  Consequently, Plaintiff, a party to the contract, suffered increased monthly payments.

Substantively, Defendant also contends that the establishment of an escrow account has not damaged Plaintiff because he is essentially accountable for the same amount of property costs: his normal mortgage payment, taxes, and insurance.  Not only that, Defendant claims an escrow account has given Plaintiff "an opportunity to break up the escrow shortage into monthly payments" "rather than requiring Plaintiff to reimburse its property tax payments in one fell swoop."[30]  Although Defendant's argument is persuasive as an abstract proposition, it does not account for the realities of Plaintiff's financial circumstances.  For instance, Defendant has not accounted for Plaintiff's lost interest on these funds or other opportunity costs. In short, the Court cannot conclude as a matter of law that Plaintiff has benefited—or at least has not suffered—from Defendant's purported breach.

Finally, Defendant claims that Plaintiff cannot allege it breached the Security Deed because he lacks personal knowledge as to whether Defendant sent the required escrow notice.  Defendant's argument is irrelevant.  The Federal Rules of Civil Procedure do not

---

[29] To the extent Defendant asserts in its Reply that Plaintiff's increased mortgage payment satisfied the Security Deed's written notice requirement, the Court declines to consider this argument.  As the Eleventh Circuit "repeatedly ha[s] admonished, arguments raised for the first time in a reply brief are not properly before a reviewing court."  *Herring v. Sec'y Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005) (internal quotation omitted).

[30] Mtn. to Dismiss, p. 7 [Doc. 4-1].

require a complaint to be based on personal knowledge.[31]  Rather, Rule 11 merely requires that an attorney or unrepresented party verify that "the factual contentions … will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."[32]  It is entirely reasonable for Plaintiff and his attorney to believe that, since Plaintiff did not receive notice, further investigation will reveal that Defendant did not, in fact, send such notice.  Thus, Plaintiff's breach of contract claim—and in turn, his derivative attorney's fees claim—may proceed.

B.     **Attempted Wrongful Foreclosure**

To assert a claim for attempted wrongful foreclosure, a plaintiff must allege that he sustained damages as a direct result of "a knowing and intentional publication of untrue and derogatory information concerning [his] financial condition."[33]  In this case, Plaintiff does not allege that Defendant has published any information concerning his financial condition.  Instead, Defendant has merely "threatened" to foreclose on the property by correspondence directed solely to Plaintiff.[34]  Consequently, Plaintiff's attempted wrongful foreclosure claim must be **DISMISSED**.[35]

C.     **Intentional Infliction of Emotional Distress**

---

[31] *Am. Hospice, Inc. v. Sebelius*, 1:08-CV-01879-JEO, 2012 WL 9013005, at *4 n.7 (N.D. Ala. Jan. 27, 2010).
[32] Fed. R. Civ. P. 11(b)(3); *see, e.g.*, *Langadinos v. Am. Airlines, Inc.*, 199 F.3d 689, 73 & n.9 (1st Cir. 2000).
[33] *Aetna Fin. Co. v. Culpepper*, 171 Ga. App. 315, 320 S.E.2d 228, 232 (1984).
[34] *See* First Am. Compl., ¶ 34.
[35] *See, e.g.*, *Jenkins v. McCalla Raymer, LLC*, 492 F. App'x 968, 972 (11th Cir. 2012).

In light of the foregoing, Plaintiff requests damages for intentional infliction of emotional distress.  In particular, he alleges that Defendant's misconduct has caused him to suffer "a great deal of undue stress, worry, emotional distress, and anguish."[36]  To establish a claim for intentional infliction of emotional distress, a plaintiff must allege that (1) the defendant acted intentionally or recklessly; (2) the defendant's actions were extreme and outrageous; (3) a causal connection between the wrongful conduct and the emotional distress; and (4) the plaintiff suffered severe emotional distress.[37]  Generally, a defendant is only liable "where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."[38]  Whether a defendant's conduct is extreme and outrageous is a question of law for the Court.[39]

In this case, Defendant's conduct does not rise to a level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress.  Even assuming, *arguendo*, that Defendant failed to notify Plaintiff of its intent to institute an escrow account and adversely proceeded against Plaintiff thereafter, such "[s]harp or sloppy business practices, even if in breach of contract, are not generally considered as going beyond all reasonable bounds of decency as to be utterly intolerable in a civilized

---

[36] First Am. Compl., ¶ 52.
[37] *Bridges v. Winn-Dixie Atlanta, Inc.*, 176 Ga. App. 227, 230 (1985).
[38] *Norfolk So. Ry. Co. v. Spence*, 210 Ga. App. 284, 285 (1993) (internal quotation omitted).
[39] *Yarbray v. S. Bell Tel. & Tel. Co.*, 261 Ga. 703, 706 (1991).

community."[40]  At worst, Defendant has mistakenly threatened Plaintiff with potential foreclosure and damage to his credit rating.  While Plaintiff may find Defendant's conduct to be objectionable, it does not support a claim for intentional infliction of emotional distress.[41]  Accordingly, Plaintiff's claim is **DISMISSED** as a matter of law.

## II.     PLAINTIFF'S MOTION FOR SANCTIONS

Finally, Plaintiff seeks sanctions for Defendant's alleged violation of the Consent Interlocutory Injunction, which enjoins Defendant from "proceeding with, conducting, or completing the foreclosure sale" during the pendency of this action.[42]  Plaintiff alleges Defendant's agents have contacted him regarding his mortgage loan and issues related thereto.  He also references three written communications from Defendant's agents indicating that his property has been referred for foreclosure.  In pertinent part, they state: (1) Plaintiff's property has "been referred to foreclosure"; (2) "[t]his law firm is seeking solely to foreclose"; and (3) "[t]ime is running out to avoid foreclosure, but it's not too late to apply for an alternative."[43]

While Plaintiff may find these actions distasteful, they do not violate the Injunction.  Defendant's communications merely suggest its intent to foreclose on the property in the

---

[40] *Kin Chun Chung v. JPMorgan Chase Bank, N.A.*, No. 1:11-CV-2131-TWT, 2013 WL 5354211 (N.D. Ga. Sept. 24, 2013) (quoting *United Parcel Service v. Moore*, 238 Ga. App. 376, 377 (1999)) (internal quotation marks omitted).
[41] *See, e.g.*, *Stroman v. Bank of Am. Corp.*, 852 F. Supp. 2d 1366, 1371, 1382 (N.D. Ga. 2012) (dismissing IIED claim where plaintiff received erroneous billing statements with late fees and past-due balances and also received "dunning collection letters," some of which threatened negative credit reporting, acceleration of the loan, and foreclosure).
[42] Consent Interlocutory Injunction, p. 3 [Doc. 15-1].
[43] Plaintiff's Aff., pp. 4, 7, 9 [Doc. 14-1].

future.  Plaintiff has not presented any evidence to suggest that Defendant has (a) sent the notices required by O.C.G.A. §§ 44-14-162 or 44-14-162.2 to commence foreclosure proceedings; (b) noticed or scheduled a foreclosure sale; or (c) conducted a foreclosure sale.  Thus, the Court will not award sanctions upon the instant Motion.

## CONCLUSION

Defendant's Motion to Dismiss [Doc. 4] is **GRANTED IN PART** and **DENIED IN PART**.  Plaintiff's claims for attempted wrongful foreclosure and intentional infliction of emotional distress are hereby **DISMISSED**.  His remaining breach of contract claim and derivative request for attorney's fees will proceed.  The Court's Consent Interlocutory Injunction remains in effect; thus, Defendant's request to deny Plaintiff injunctive relief is **DENIED**.  Plaintiff's Motion for Sanctions [Doc. 14] is also **DENIED**.

In light of the foregoing, the Court hereby **LIFTS** the stay of discovery in this case.  The parties must comply with all mandates of the federal and local rules within thirty (30) days of the date of this Order.

**SO ORDERED**, this 13th day of January, 2014.

S/  C. Ashley Royal
C. ASHLEY ROYAL, CHIEF JUDGE
UNITED STATES DISTRICT COURT

BBP/ssh